UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMIR ANDREWS, | Civil Action No. 18-13306 (MAS) (DEA) |
| Plaintiff, | |
| v. | **OPINION** |
| OFFICER D. PRIEBS, et al., | |
| Defendants. | |

**SHIPP, District Judge**

*Pro se* Plaintiff Amir Andrews has filed an Amended Complaint pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights have been violated. (Am. Compl., ECF No. 5.) Having previously granted Plaintiff *in forma pauperis* status (ECF No. 3), the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant). For the reasons stated below, the Court dismisses certain of Plaintiff's § 1983 claims, but will allow certain other claims to proceed past screening.

**I.    FACTUAL BACKGROUND**

The allegations of this lengthy Amended Complaint will be construed as true for purposes of this screening opinion. Plaintiff brings this civil rights action against Defendants Officer D. Priebs ("Priebs"), Sergeant Teresa DeJesus ("Sgt. DeJesus" or "DeJesus"), D. Hunter ("Hunter") and Sergeant Good ("Sgt. Good" or "Good").

Plaintiff alleges that on September 24, 2016, Priebs asked Plaintiff why he took so long to clean his cell and take a shower. (Am. Compl. ¶ 11.) Plaintiff responded that Priebs's question was ". . . very immature." (*Id.*) As a result, Priebs threatened Plaintiff with vile language and retaliation. (*Id.*) A second inmate spoke with Priebs to resolve the matter, but was unsuccessful. (*Id.*) Various inmates encouraged Plaintiff to report the issue, given that Priebs appeared ready to assault Plaintiff. (*Id.*) Plaintiff and other inmates informed Sgt. Good of Priebs's threat to Plaintiff. (*Id.* ¶ 12.) Sgt. Good told Plaintiff to file a grievance, but failed to "render any form of relief." (*Id.*)

According to Plaintiff, Priebs denied Plaintiff "access to use the prison's grievance system." (*Id.*) When Plaintiff was later able to write a grievance related to the incident, Priebs continued to threaten Plaintiff. (*Id.* ¶¶ 13-14.) Priebs began telling other prisoners that Plaintiff was a snitch and an informant. (*Id.* ¶ 14.) Plaintiff continued to file grievances addressed to various prison officials. (*Id.* ¶¶ 15-18.)

Plaintiff states that on October 1, 2016, Priebs moved Plaintiff to a different tier in the prison. (*Id.* ¶¶ 20.) Priebs continued to tell other inmates that Plaintiff was providing intelligence to the prison. (*Id.* ¶ 21.) On October 2, 2016, Priebs conducted a cell search of Plaintiff's cell, and submitted Plaintiff to a strip search in view of other inmates. (*Id.*) Plaintiff was forced to bend over, and "spread [his] buttock so that the Defendant D. Priebs and the rest of the inmates housed on two tier could see inside of his rectum area." (*Id.*) Plaintiff was then escorted to a new housing unit and placed in a supply closet for 40 minutes. (*Id.*) Priebs escorted Plaintiff back to his cell and threatened Plaintiff for filing grievances. (*Id.* ¶ 23.) Priebs refused to open Plaintiff's cell and falsified disciplinary charges against Plaintiff. (*Id.* ¶ 25.)

DeJesus later summoned Plaintiff, at which time Plaintiff described Priebs's retaliation and the nature of Plaintiff's grievances. (*Id.* ¶¶ 25-28.) DeJesus failed to take any remedial action and told Plaintiff and other inmates to stop filing grievances. (*Id.* ¶ 28.) Plaintiff was then escorted in handcuffs to the medical clinic and placed on "Prehearing Detention status." (*Id.* ¶ 29.)

On October 4, 2016, Plaintiff went before disciplinary hearing officer Hunter and informed Hunter of all the events that transpired. (*Id.* ¶ 31.) Hunter failed to permit Plaintiff to submit certain documentary evidence of Plaintiff's allegations by way of witnesses or written statements. (*Id.* ¶ 32.) Hunter advised Plaintiff to discontinue writing grievances and imposed a sentence on Plaintiff of administrative segregation, loss of computation time, and loss of recreation. (*Id.* ¶ 34.) Hunter threatened that the sentence would increase if Plaintiff appeared before Hunter again. (*Id.*)

Plaintiff alleges that Priebs threatened and retaliated against him, and subjected him to an unconstitutional strip search. (*Id.* ¶¶ 50-51.) Plaintiff avers that DeJesus similarly retaliated against him and failed to take corrective action against Priebs. (*Id.* ¶ 52.) Plaintiff states that Sgt. Good also failed to take corrective action and failed to protect Plaintiff from Priebs's actions. (*Id.* ¶¶ 53-55.) Finally, Plaintiff maintains that Hunter denied Plaintiff procedural due process protections. (*Id.* ¶¶ 56-57.) Plaintiff seeks injunctive and declaratory relief, in addition to damages. (*Id.* ¶¶ 59-82.)

## II. LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts are required to review civil actions in which a prisoner proceeds *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). When reviewing such actions, the PLRA instructs courts to dismiss cases that are at any time frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune. *Id.* "The legal standard for dismissing a complaint for failure

to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

Because Plaintiff is proceeding *in forma pauperis*, the applicable provisions of the PLRA apply to the screening of his Amended Complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555.) In order to survive a dismissal for failure to state a claim, a complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556.) A Plaintiff must be able to demonstrate that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. Furthermore, while *pro se* pleadings are liberally construed, they "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### III. ANALYSIS

The Court considers Plaintiff's claims brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to

4

> be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To recover under this provision, two elements must be shown. First, a plaintiff "must establish that the defendant acted under color of state law," and second, that the plaintiff has been deprived of "a right secured by the Constitution." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

A. Retaliation

Plaintiff alleges that he was retaliated against by Priebs and DeJesus for filing grievances against Priebs. The Court will also construe Plaintiff to allege a retaliation claim against Hunter. "Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012); *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."). To state a claim for retaliation, a plaintiff must allege that: "(1) he engaged in constitutionally protected conduct[;] (2) he then suffered some adverse action caused by prison officials; and (3) a causal link existed between the protected conduct and the adverse action." *Obiegbu v. Werlinger*, 581 F. App'x 119, 122 (3d Cir. 2014) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

The filing of grievances is protected conduct under the First Amendment. *See Mitchell v. Horn*, 318 F.3d at 530 (stating that filing of prison grievances constitutes protected conduct failing within ambit of First Amendment). Plaintiff alleges that as a result of his filing grievances, Priebs, DeJesus and Hunter threatened Plaintiff, Priebs strip searched Plaintiff in view of other inmates and locked him in a supply closet, DeJesus falsified a disciplinary report against Plaintiff, and

5

Hunter threatened Plaintiff with increased disciplinary charges. All of these actions appear to have taken place shortly after the filing of Plaintiff's grievances. At this time, the Court will permit Plaintiff's retaliation claims against Priebs, DeJesus and Hunter to proceed past screening.

B. Strip Search

Plaintiff alleges that Priebs subjected him to an unconstitutional strip search which required him to "spread [his] buttock" in view of other inmates. (Am. Compl. ¶ 34.) Inmates do not have a Fourth Amendment right to be free of strip searches under all circumstances. *See Bell v. Wolfish*, 441 U.S. 520 (1979). Although strip searches constitute a "significant intrusion on an individual's privacy," *see United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), where officials conduct the searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility, strip searches do not violate the Fourth Amendment. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010). When determining the reasonableness of a search, courts must balance "the need for the particular search against the invasion of personal rights that the search entails" and consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Wolfish*, 441 U.S. at 558-59.

The search at issue here appears to have been conducted as punishment, and took place in view of other inmates. The Court finds that Plaintiff's Fourth Amendment claim against Priebs is not subject to dismissal at this time.

C. Failure to Take Corrective Action

Plaintiff states that he informed Sgt. Good and DeJesus of Priebs's threats, but they failed to take remedial action. Claims that prison officers failed to take corrective action require personal participation. "A defendant in a civil rights action must have personal involvement in the alleged

wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved[.]" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal quotation marks and citations omitted). The Third Circuit has found that a supervisor can be liable for acts of subordinates where "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). "[W]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in . . . the subordinate's conduct." *Bennett v. Washington*, 2015 WL 731227, at *11 (E.D. Pa. Feb. 19, 2015) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997)).

Plaintiff fails to establish that Sgt. Good acquiesced to a constitutional violation. In fact, Sgt. Good told Plaintiff to write up the incident regarding Priebs, which Plaintiff did the next day. (*See* Am. Compl. Ex. A.) Furthermore, at the time Plaintiff informed Sgt. Good about the incident, Plaintiff had never been physically harmed. Instead, Plaintiff had only exchanged course words with Priebs, which Plaintiff interpreted as a threat. It is well established that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983." *Stepney v. Gilliard*, No. 02-5259, 2005 WL 3338370, at *6 (D.N.J. Dec. 8, 2005) (quotation marks and citation omitted); *see also Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) ("verbal harassment does not give rise to a constitutional violation enforceable under § 1983.") (citation omitted). While Plaintiff

states that Priebs's threats were ongoing, there is nothing to indicate that Plaintiff informed Sgt. Good of the continued threats. Thus, Plaintiff has failed to demonstrate that Sgt. Good acquiesced to any constitutional violation.

Regarding the claims against DeJesus, it is not evident what remedial action DeJesus could have taken. It appears that Plaintiff informed DeJesus of Priebs's behavior only after the threats and strip search had taken place. It also appears that Plaintiff was immediately taken into prehearing detention after speaking with DeJesus. (Am. Compl. ¶ 29.) At that point, Plaintiff does not aver that he was, or could have been, threatened further by Priebs. The Court will, therefore, dismiss this claim against Sgt. Good and Sgt. DeJesus.

D. Failure to Protect

Plaintiff argues that Sgt. Good and Sgt. DeJesus failed to protect Plaintiff from Priebs's actions. "'To state a failure-to-protect claim, a prisoner 'must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm.'" *Parkell v. Markell*, 622 F. App'x 136, 139 (3d Cir. 2015) (quoting *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). "An official acts with deliberate indifference when he or she knows of and disregards a substantial risk of serious harm to inmate health or safety." *Parkell*, 622 F. App'x at 139 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). An officer may be liable for failure to protect where the officer had a "a realistic and reasonable opportunity to intervene and simply refused to do so." *Bistrian*, 696 F.3d at 371 (internal quotations and citation omitted).

As explained *supra*, at the time Plaintiff informed Sgt. Good of Priebs's behavior, Priebs had only verbally threatened Plaintiff. *See Roberson*, 822 F. Supp. at 189 ("verbal harassment

8

does not give rise to a constitutional violation"). There is also nothing to indicate that Sgt. Good was made aware of any ongoing threats by Priebs. Similarly with Sgt. DeJesus, at the time DeJesus was informed of Priebs's actions, Plaintiff was immediately moved to prehearing detention status and was thereafter placed in administrative segregation. (Am. Compl. 29-34.) There are simply insufficient facts to demonstrate how DeJesus failed to protect Plaintiff from Priebs's actions, when those actions—the verbal threats and strip search—ceased at that point. The Court dismisses Plaintiff's failure to protect claims.

    E.    Procedural Due Process

Plaintiff avers that he was denied proper procedural due process protections by Hunter during his disciplinary hearing. It is well established that "[p]risoners . . . may not be deprived of life, liberty or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

Here, Plaintiff alleges that as a result of his disciplinary hearing he was sanctioned with "[n]inety days of administrative segregation, sixty days loss of computation time (not being challenged) and thirty days loss of recreation[]." (Am. Compl. ¶ 34.) Plaintiff also states that he lost wages and his shower runner position. (*Id.*) Plaintiff does not have a protected liberty interest in any of the above activities. With respect to his lost job and lost wages, prisoners have no constitutional right to a prison job. *See Abraham v. Del. Dep't of Corr.*, 331 F. App'x 929, 931 (3d Cir. 2009) ("Prisoners have no constitutional right to rehabilitation, education, or jobs" (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981))). Further, while "the denial of exercise and

9

recreation may result in a constitutional violation," *Millhouse v. Arbasak*, 373 F. App'x 135, 138 (3d Cir. 2010), Plaintiff's loss of thirty days of recreational activities is likely not enough to amount to a constitutional violation. *See Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) ("the temporary denial of out of cell exercise for twenty-eight days was not a substantial deprivation" of the inmate's Eighth Amendment rights); *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001) (denial of yard privileges for no more than ninety days not cruel and unusual punishment). The Third Circuit has explained that other Courts of Appeals "consider the totality of the circumstances . . . [such as] the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation." *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (citations omitted). Here, Plaintiff has not alleged facts establishing that the recreational deprivation has caused him tangible physical harm.

Finally, Plaintiff also states that he was placed in administrative segregation for ninety days. "Generally, placement in administrative segregation will not create a liberty interest." *Riley v. Carroll*, 200 F. App'x 157, 158 (3d Cir. 2006) (citing *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002)). A liberty interest can be created, however, when a prison imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). Generally, duration alone is insufficient to establish an atypical and significant hardship to trigger a protected

liberty interest. *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest); *Torres*, 292 F.3d at 151-52 (administrative segregation for 120 days did not implicate a protected liberty interest); *cf. Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (holding that eight years in administrative custody is atypical and implicates a protected liberty interest); *Allah*, 574 F. App'x at 139 (finding liberty interest where inmate held in administrative segregation for six years, and where cell block smelled of "urine and excrement, and was infested with pests."). While there may have been flaws in Plaintiff's disciplinary hearing, Plaintiff falls well short of stating a valid procedural due process claim under § 1983 because the discipline imposed does not implicate a protected liberty interest. The Court dismisses this claim without prejudice.

## IV.  CONCLUSION

For the reasons set forth above, the Court will allow Plaintiff's retaliation claims against Priebs, DeJesus and Hunter to PROCEED at this time. The Court will permit Plaintiff's Fourth Amendment claim against Priebs to PROCEED at this time. The remainder of the Amended Complaint is DISMISSED WITHOUT PREJUDICE. An appropriate order follows.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: April 24, 2019